**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **ALLEN VIZIER, SR.** | * | **CIVIL ACTION NO.: 2:13-CV-06472-SSV-SS** |
| | * | |
| **VERSUS** | * | **SECTION "R"** |
| | * | **CHIEF JUDGE SARAH VANCE** |
| **CRESCENT MARINE TOWING, INC.** | * | |
| | * | |
| | * | **MAGISTRATE (1) : HON. SHUSHAN, J.** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

      Plaintiff, Captain Vizier, filed this suit following an injury he sustained while handling a deck plate in the engine room of the vessel, M/V DOUGLAS. Defendant, Omni Marine Transportation, Inc. moves for partial summary judgment, dismissing Capt. Vizier's claims of Jones Act negligence because there is no genuine issue of material fact that Capt. Vizier was solely at fault in causing his own accident. Captain Vizier alleges he injured himself handling a deck plate. It was his decision to lift the deck plate – he had never handled this plate before, but he did not call Omni first. Neither he nor the crew were in any rush – the vessel was tied up. Capt. Vizier was carrying out his own plan. It was Captain Vizier's decision not to wait for more help before handling the plate, even though he had just sent a deckhand up to get tools. Capt. Vizier cannot meet his burden under the Jones Act to prove any action or inaction of defendant caused or contributed to his accident.

1

## **FACTS**

After working as a deckhand and tankerman for several years, in 1997, Plaintiff, Mr. Allen Vizier, obtained his Master of Towing 100 ton license.[1] During his twelve (12) years experience as a captain before working for Omni Marine Transportation, Inc. ("Omni Marine"), plaintiff worked for at least ten (various) inland towboat companies.[2] Captain Vizier began working for Omni Marine in 2009.[3] Capt. Vizier continued working solely for Omni until a week after his October 14, 2013 accident.

During Captain Vizier's employment with Omni, he received a safety manual and participated in monthly safety drills.[4] Additionally, as part of Omni's safety program, Omni would send out safety videos to the M/V DOUGLAS. Captain Vizier or one of the other captains would have the crewmembers watch the safety video; have a round table discussion and then Captain Vizier and the crewmembers would each take a test on the video. The tests would then be returned to the Omni office.[5] One of the safety videos watched yearly by Captain Vizier was about lifting techniques and preventing neck or back injuries, titled, "Step Back for Safety-Back Safety & Ergonomics." During Capt. Vizier's employment with Omni, he completed the corresponding test question for this video *five times*."[6]

During the four years Captain Vizier's was employed by Omni Marine, he only worked on the M/V DOUGLAS and he was always employed as a captain.[7] The M/V

---

[1] Exhibit A - Deposition of Allen Vizier, p. 35, lns .2-11.
[2] *Id.* at p. 38 ln. 1-23; p. 40 ln.21-p. 41 ln 5; p.42 ln. 1-p.43 ln.8; p.44 ln.5-11; p. 44 ln.14-20; p.50 ln.11-18; and p. 52 ln.12-15.
[3] *Id.* at p. 108 ln.4-16.
[4] I*d.* p. 245 ln. 1-12.
[5] I*d.* p.245 ln. 15-p. 251 ln.1.
[6] *Id.* p.245 ln. 15-p. 251 ln.1 and Exhibit D-Moxie Training video cover "Step Back for Safety-Back Safety & Ergonomics" marked as Exhibit 16 to Deposition of Allen Vizier and Exhibit E Corresponding Test questions for the "Step Back for Safety-Back Safety & Ergonomics" for five years completed and signed by Plaintiff marked as Exhibit 17 to Deposition of Allen Vizier.
[7] Exhibit A – Deposition of Plaintiff, 55 ln. 14-16 and p. 58 ln. 21-25.

DOUGLAS was similar to the push boats Capt. Vizier worked on for the prior twelve years.[8] The M/V DOUGLAS is an inland push boat. During Captain Vizier's employment with Omni, the M/V DOUGLAS worked at the Cargill grain elevator facility in Westwego, Louisiana.[9] The M/V DOUGLAS's job is primarily to maneuver empty barges which had recently been unloaded to be moored or tied up to fleeting facilities along the banks of the Mississippi River in the vicinity of the grain elevator facility.[10] The vessel operates twenty-four hours with twelve hour hitches.[11] Each twelve hour shift operates with a crew of one (1) captain and two (2) deckhands.[12] At all times during Captain Vizier's employment, the four (4) deckhands assigned to the M/V DOUGLAS lived on the vessel.[13] At the time of Captain Vizier's accident, he had been a captain on inland push boats for sixteen (16) years and had worked on the DOUGLAS for four (4) years.[14]

On the day of the incident in question, at the beginning of Captain Vizier's shift, a deckhand told him no fuel was coming out of drain hose when the valve was turned.[15] This drain hose is not connected to the engine but rather to a fuel trap. This was the first time that anyone reported to Capt. Vizier that this valve did not work.[16] Approximately an hour and half into his shift, Capt. Vizier went to the engine room and turned the valve himself and did not observe any fuel coming out of the hose.[17] Approximately eight (8) hours later, Capt. Vizier returned to the engine room with his two deckhands, Mr. Marcus Daugherty

---

[8] *Id.* p. 44 ln.14-20.
[9] *Id.* p. 58 ln. 13-25.
[10] *Id.* p. 58 ln.21-p.59 ln.21.
[11] *Id.* p.141 ln. 7-p.142 ln.6.
[12] *Id.* p.67 ln.22-p.68 ln, 7.
[13] Exhibit C – Deposition of Marcus Daugherty p.81 ln. 1-5.
[14] Exhibit A – Deposition of Plaintiff, 55 ln. 14-16 and p. 58 ln. 21-25 and p. 35, lns .2-11.
[15] Exhibit A – Deposition of Allen Vizier, p. 169, ln. 20 – p. 170, ln. 23.
[16] *Id.* p. 170 ln. 24-p. 171 ln.11.
[17] *Id.* at p. 171, lns. 13 – 24.

("Marcus") and Mr. Malcolm Harold ("Malcolm") to further investigate why the valve was not working.[18] At this time, the M/V DOUGLAS was tied up to a dock.[19]

Captain Vizier turned the valve himself and did not observe any fuel coming out of the hose.[20] The valve in question is underneath the deck plate. The valve can be accessed from a side opening. The valve is approximately eight inches (8") from the side opening. Captain Vizier decided that the solution would be to lift the eight foot by three foot deck plate to further investigate the valve in question.[21] The two deckhands were following the orders of Captain Vizier. Captain Vizier did not contact anyone at Omni Marine before determining to lift the deck plate. No one at Omni Marine instructed Captain Vizier to lift the deck plate.[22]

Before lifting the deck plate, Capt. Vizier sent Malcolm to the upper deck to retrieve tools to help them remove the bolts holding down the eight foot by three foot deck plate.[23] Before waiting for Malcolm to return, Capt. Vizier and Marcus were able to remove the bolts fastening the eight foot by three foot deck plate.[24] In order to lift the eight foot by three foot deck plate, the stairwell to the engine room had to be removed because it was bolted on top of this deck plate. Capt. Vizier and Marcus then unbolted the stairs leading down into the engine room in order to access this deck plate.[25] They attempted to lift the plate themselves.[26] During this process, the plate was lifted to an approximately forty-five (45)

---

[18] *Id.* at p. 178, ln. 24 – p. 181, ln 9.
[19] Id. p. 225 ln. 1-17 and p. 230 ln. 15-17.
[20] *Id.* at p. 171, lns. 13 – 24.
[21] *Id.*
[22] I*d.* p. 227, lns. 11 – 14.
[23] *Id.*
[24] *Id.* p. 187 ln. 21-p. 189 ln.13.
[25] *Id.* p. 178, ln. 24 – p. 181, ln 9; p. 183, lns. 2 – 13.
[26] *Id.*

4

degree angle and then it "slipped."[27] When Capt. Vizier attempted to stop the plate from falling back down to the engine room floor, he "felt a pop in his neck."[28]

After releasing the plate, Capt. Vizier decided to lift the plate a second time.[29] He and Marcus lifted the plate again, this time successfully, and leaned the plate against the engine.[30] After the plate was lifted, they discovered the valve was not broken. Rather the problem was the hose connected to the valve was clogged.[31] They fixed the clog by hooking the hose up to an air compressor, located just feet from where they were performing their task, and blowing air through the hose, which forced out the debris or particulate responsible for the alleged clog.[32] After the alleged incident, Capt. Vizier and the crew returned to work and completed their hitch without further incident.

The accident report completed and signed by Captain Vizier on October 17, 2013 is consistent with his deposition testimony of how his accident occurred:

> On October 14th, 2013, me and Marcus (deckhand) went in the engine room trying to fix the fuel trap. The fuel trap wasn't bleeding, *so we had to pick up the deck plate to get to the valve. Me and Marcus got the deck plate up. We tried to balance it against the engine, but it fell toward me.* So I grabbed it to try to stop it from falling. When I grabbed it, the plate pulled me over and bent me. And that's when I felt a pop in my neck with a burning feeling. So I let the plate go. "The two deckhands on watch were Marcus Daugherty and Malcolm Harold. The time was between 10:00 and 11:00 a.m. Vessel was tied up inside HP slip. The conditions were calm and clear.(emphasis added).[33]

Capt. Vizier testified in his deposition:
Q. O.K. October 14th, 2013, was the first time that there was ever a clog in the hose; right?

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] Id. at p. 197, lns. 21 – 25 and p. 198 ln. 23 -p. 199 ln 1.
[32] *Id.* at p. 178, ln. 24 – p. 181, ln 9.
[33] Id.at p.224-ln. 25-225 ln. 18 and Exhibit H - Plaintiff's accident report, marked as Exhibit 12 to Deposition of Allen Vizier.

5

      A.  Yes.
      Q.  O.K. And October 14th, 2013, was the first time that any deckhand or anybody came to you about the valve not working?
      A.  Yes.[34]

## STANDARD OF REVIEW

**A. Summary Judgment**

Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[35] A material fact is a fact which, under applicable law, may alter the outcome of the suit.[36] A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it.[37]

"The moving party bears the burden of demonstrating that there exist no genuine issues of material fact."[38] When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion."[39] If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[40]

---

[34] Id. p. 229 ln. 18-25.
[35] Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston,* 337 F.3d 539, 540–41 (5th Cir.2003).
[36] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,* 271 F.3d 624, 626 (5th Cir.2001).
[37] *Anderson,* 477 U.S. at 250; *TIG Ins. Co. v.. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir.2002).
[38] *In re Vioxx Prods. Liab. Litig.,* 501 F.Supp.2d 776, 781 (E.D.La. 2007).
[39] *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 137 (5th Cir.2004).
[40] *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir.1995).

Furthermore, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.[41] Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.[42] Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case on which they bear the burden of proof.[43] A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment.[44]

### B. Jones Act – Negligence

Omni Marine seeks dismissal of plaintiff's Jones Act claim. The elements of a Jones Act claim are (1) the claimant is a seaman; (2) he or she suffered injury or death in the course of his or her employment; (3) the seaman's employer was negligent; and (4) the employer's negligence caused the injury at least in part.[45] Defendant concedes the standard for causation for claims brought pursuant to the Jones Act is reduced and an injured seaman need only show that his employer's negligence played any part, even the slightest, in producing the injury.[46] However, a Jones Act employer is not an insurer of a seaman's safety; the mere occurrence of an injury does not establish liability.[47] Even under the Jones Act, a party must establish more than mere "but for" causation.[48]

---

[41] See *Anderson,* 477 U.S. at 248.
[42] *Id.* at 249–50 (citations omitted).
[43] *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir.2004).
[44] *Anderson,* 477 U.S. at 247–48.
[45] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997).
[46] See *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 303 (5th Cir.2008); *Smith v. Basic Marine Servs., Inc.*, 2013 WL 4046272 (E.D. La. Aug. 7, 2013).
[47] *Marvin v. Central Gulf Lines, Inc.*, 554 F.2d 1295, 1299 (5th Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Smith v. Basic Marine Servs., Inc.,* 2013 WL 4046272 (E.D. La. Aug. 7, 2013).
[48] See *Gavagan v. United States*, 955 F.2d 1016, 1019–20 (5th Cir.1992); *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008).

Under the Jones Act, an employer owes its employees a duty to use reasonable care to provide a safe place to work.[49] However, this standard of care does not hold employers to a higher duty of care than required under ordinary negligence.[50] This duty is simply one of ordinary prudence under the circumstances.[51] The duty to provide a safe place to work is broad in scope, but it is not a form of strict liability; ordinary prudence under the circumstances is the standard for the duty of care owed by an employer to a seaman.[52] Likewise, seamen are held to the standard of the reasonable seaman in like circumstances.[53] The causation standard is the same for both the employer's negligence and contributory negligence: causation is established if the party's "negligence played any part, even the slightest, in producing the injury."[54]

## **LAW AND ARGUMENT**

1. **THE SOLE CAUSE OF CAPTAIN VIZIER'S ACCIDENT WAS HIS OWN NEGLIGENCE.**

    **A. Capt. Vizier, without contacting Omni, chose to – and how to – handle the deck plate that resulted in his injury. Omni cannot be held legally responsible for his choices.**

At the time of the alleged accident, Capt. Vizier was the captain of the M/V DOUGLAS, responsible for the safe operation and navigation of the vessel. Capt. Vizier had worked as a captain of the DOUGLAS since approximately 2009, which is over three (3) years prior to his October 14, 2013 accident. Capt. Vizier was familiar with the vessel and its equipment, including the valve and hose in the engine room of which he now complains. He testified in his deposition that no one had ever complained about not being

---

[49] *Verrett v. McDonough Marine Serv.,* 705 F.2d 1437, 1441 (5th Cir.1983).
[50] *See Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331, 339 (5th Cir.1997).
[51] *See Id.*
[52] *Gautreaux*, 107 F. 3d at 335-336.
[53] *Id.* at 339
[54] *See Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 303 (5th Cir.2008)).

able to reach the valve,[55] and he even admits to reaching and turning the valve on the date of the accident.[56]

During his deposition, Capt. Vizier was asked to state whether he had the ultimate say as to how the crew was going to address how the valve was going to be fixed on October 13, 2014. After initially stating that it was the design of the boat that decided how they were going to fix the valve, Capt. Vizier testified that he was never instructed by anyone to lift the deck plate:

> Q. O.K. So your final answer today is: You had nothing to do with lifting up the plate?
>
> A. I don't know how to answer that.
>
> Q. Did Marcus tell you to lift up the plate?
>
> A. Nope.
>
> Q. Did Malcolm tell you to lift up the plate?
>
> A. No.
>
> Q. O.K. You didn't receive any orders from Warren to lift up the plate; did you?
>
> A. No.
>
> Q. And you didn't receive any orders from Bubby to lift up the plate; did you?
>
> A. No.
>
> Q. And you didn't receive orders from anybody at Omni or Crescent Marine to lift up the plate; did you?
>
> A. No.[57]

Capt. Vizier's decision to lift the deck plate without contacting his employer is harder to understand because he admitted the vessel was tied up at the time.[58] Mr. Warren

---

[55] Exhibit A – Deposition of Allen Vizier, p. 227, lns. 11 – 14.
[56] *Id.* at p. 171, lns. 13-24.
[57] Exhibit A – Deposition of Allen Vizier, p. 241, ln. 5 – p. 242, ln. 3.

9

Waguespack, corporate representative of Omni Marine, testified in his deposition that Omni would never expect or ask its captains to perform the kind of heavy labor associated with moving the engine room stair well and lifting this deck plate in the engine room:

> Q. As the operations manager for Omni, do you believe that Captain Vizier's actions on the day of his accident of deciding to move the engine room stairwell and lifting up the eight-foot by three-foot deck plate, was that within the scope of Captain Vizier's job as a captain?
>
> A. No.
>
> Q. Why is that?
>
> A. I wouldn't expect any of the captains to get down there and be doing that kind of heavy lifting, not with four deckhands on the boat. One, I wouldn't expect him to lift the deck plate, but being the decision was made to lift the deck plates, I would have expected more help if he was going to do it from the deckhands. But I would never have encouraged. I would never want him to. That's hindsight.
>
> Q. If there was an issue with a valve like in Exhibit 6 of not working, is that something that you would have called a mechanic for?
>
> A. I wouldn't have called a mechanic since it's not on the engine. It's not related directly to the engine. I would have called the shipyard, if there were an issue with the valve, and asked the shipyard to come take a look at it. Because the shipyard could have sent people out there with the tools and changed it, or we could have gone to the shipyard and do what we eventually did. But as far as the clogged line itself, no, I would not have asked.[59]

Capt. Vizier had no duty or obligation to take on the task of lifting this deck plate in the engine room of the M/V DOUGLAS. He was never instructed by anyone at Omni to perform this task and Omni never would have allowed him to complete the task had he taken the time to call Omni and inform them that he planned to lift this deck plate.

Two photos of the scene of the accident, taken by Mr. Vizier after his accident but before he left the vessel, are attached. The first photo shows the deck plate Mr. Vizier

---

[58] *Id.* at p. 230, lns. 15 – 17.
[59] Exhibit B – Deposition of Warren Waguespack, p. 112, ln. 7 – p. 113, ln. 13.

decided to lift, extending from the lower left portion of the photo to the center.[60] The second photo shows the foot of the stairs attached to the same piece of deck plate.[61]

This Court has granted motions for summary judgment under similar circumstances. In *Williams v. International Construction Group*, 2011 WL 1116312 (Fallon, J.), the plaintiff alleged he was instructed to install a lock for a hand rail. In accomplishing this task, the plaintiff decided to lift a heavy pad eye and allegedly injured his back as a result. The plaintiff based his Jones Act claims on the following allegations: there was insufficient crew to assist him in making the lock since his own welding crew was dismissed, leaving only non-welding crew members; there was no equipment for him to make the lock, for example a hand cart or dolly; and ICG failed to instruct Plaintiff on how to make the lock and how to properly lift the pad eye. The Court noted, however, that the plaintiff's own testimony contradicted these statements: the plaintiff admitted that three crew-members were in the welding shack at the time of his injuries and that he did not ask them for assistance, but if he had, they would have assisted him and the plaintiff's own testimony demonstrated he was properly instructed on how to lift heavy objects, such as the pad eye. The Court granted summary judgment in favor of the Jones Act employer, finding:

> Plaintiff chose to move the pad eye on his own even though he could have sought out assistance, either from the crew-members present or the available equipment, or used the pipe available which did not require assistance at all. Plaintiff had instruction in safe-lifting techniques, as well as stop-work authority. Any negligence contributing to Plaintiff's injuries was on the part of the Plaintiff himself, not ICG.[62]

---

[60] Exhibit F – Vizier RSP 0043.
[61] Exhibit G – Vizier RSP 0041.
[62] See also *Kendrick v. Maersk Line, Ltd.*, 2006 WL 1236057 (E.D. La.), where the plaintiff alleged he was walking down a tunnel on the vessel, attempted to duck under an open electrical box door and caught his shoulder on the door and that he suffered injuries as a result. Plaintiff also alleged that the breakers for the cargo lights were faulty and tripped on a regular basis and that he was proceeding down a tunnel to fix a tripped breaker when his accident occurred. The Court granted summary judgment in favor of the employer, finding that, based on plaintiff's own deposition testimony and his written accident report, the plaintiff was the sole cause of the accident in that plaintiff either misapprehended the distance needed to clear the electrical box door or by his choosing to duck under the door rather than closing it; *Lett v. Omega Protein, Inc.*, 487 Fed. Appx. 839 (5th Cir. 2012), affirming summary judgment for the Jones Act

As a seaman, Capt. Vizier is required to act reasonably under the circumstances. He alleges he was injured while he was handling a deck plate in the engine room, but the decision to unbolt, it, the decision to lift it, the decision not to call Omni and ask for guidance, and the decision of how to lift it were all his. Therefore, Capt. Vizier caused his own accident.

### B. Capt. Vizier failed to wait for or request additional assistance to accomplish the task safely.

At the time of the accident, Capt. Vizier had available two deckhands who were on duty at the time, Marcus and Malcolm, and an additional two deckhands who were off duty but present on the vessel at the time of the accident. Instead of utilizing the additional manpower that Malcolm could have provided, Capt. Vizier sent Malcolm to get tools to assist in lifting the deck plate and then decided to go forward with the lift without waiting for him to return to help. When asked at his deposition if there was any reason why he could not have waited for Malcolm to offer additional assistance, Capt. Vizier responded that he didn't think he needed him.[63]

### C. Capt. Vizier failed to adhere to specific training from Omni Marine regarding proper lifting techniques.

Capt. Vizier also cannot complain that Omni Marine did not provide him with the training necessary to avoid the accident in question. Capt. Vizier admitted in his deposition to receiving training from Omni Marine about proper lifting procedures and techniques.

> Q: If we can go to the safety manual for a second. We're going to OMNI-0055. At the bottom, right here at the end, the end of this section, under

---

employer on negligence and unseaworthiness in part because the plaintiff chose his methods of work and caused his own accident; *Smith v. Basic Marine Services, Inc.*, 964 F.Supp.2d 597 (E.D. La. 2013) (holding "In fact, the plaintiff presents no evidence supporting his allegation that Basic Marine violated its duty to plaintiff, or that any alleged negligence caused his shoulder injury. Significantly, a Jones Act employer is not an insurer of a seaman's safety; the mere occurrence of an injury does not establish liability. (internal citations omitted))." *See also*, R*ogers v. Eagle Offshore Drilling Services, Inc.*, 764 F.2d. 300, 302 (5th Cir. 1985).
[63] Exhibit A – Deposition of Allen Vizier, p. 198, lns. 14 – 17.

"Miscellaneous," were you aware that you are supposed to always lift loads properly, that is, bending your knees?

A.   Yes.

Q.   O.K.  And you're aware that if the load is too heavy, you're supposed to ask for help?

A.   Yes.[64]

During Capt. Vizier's employment with Omni, he watched a video five times, titled, "Step Back for Safety-Back Safety & Ergonomics" regarding how to prevent neck or back injuries."[65]

If Capt. Vizier felt like he had to lift the deck plate, he still chose how to lift it and he decided how much help he needed. He acknowledged in his deposition that he was supposed to ask for help in lifting objects that he felt were too heavy. Capt. Vizier could have avoided this accident had he simply adhered to the training he received from Omni Marine.

2. **OMNI MARINE COULD NOT HAVE PREVENTED CAPT. VIZIER'S ACCIDENT BECAUSE OMNI MARINE DID NOT HAVE NOTICE OR AN OPPORTUNITY TO CORRECT THE ALLEGEDLY UNSAFE CONDITION INVOLVING THE VALVE AND DRAIN HOSE IN THE ENGINE ROOM OF THE M/V DOUGLAS ON OCTOBER 14, 2013.**

The Jones Act is not a strict liability scheme—liability only attaches based on fault.[66] The Jones Act employer must have notice and the opportunity to correct an unsafe condition before liability attaches.[67] The standard of care is not "what the employer subjectively knew, but rather what it objectively knew or should have known."[68] Omni

---

[64] *Id.* at p. 256, lns. 13 – 23.
[65] *Id.* p.245 ln. 15-p. 251 ln.1 and Exhibit D – Moxie Training video cover "Step Back for Safety-Back Safety & Ergonomics" marked as Exhibit 16 to Deposition of Allen Vizier and Exhibit E – Corresponding Test questions for the "Step Back for Safety-Back Safety & Ergonomics" for five years completed and signed by Plaintiff marked as Exhibit 17 to Deposition of Allen Vizier.
[66] *Johnson v. Blue Marlin Servs. of Acadiana, LLC*, 713 F. Supp. 2d 592, 593-94 (E.D. La. 2010); *see also Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1431 (5th Cir.1988).
[67] *Johnson*, 713 F. Supp. 2d at 593-94; *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir.1989) (*citing Perry v. Morgan Guar. Trust Co.*, 528 F.2d 1378, 1380 (5th Cir.1976)).
[68] *Johnson*, 713 F. Supp. 2d at 593-94; *Turner v. Inland Tugs Co.*, 689 F.Supp. 612, 619 (E.D.La.1988)).

expects Capt. Vizier will argue the valve was in the wrong place. Assuming for purposes of summary judgment he is correct, and assuming further his own decisions detailed above are not superseding causes, Omni did not have notice that the hose was clogged or that the valve was in the wrong position.

Assuming for purposes of this motion only that there was an unsafe condition in the engine room of the M/V DOUGLAS due to the fact that the drain hose was allegedly clogged, Capt. Vizier's Jones Act claim must fail as a matter of law.  Capt. Vizier cannot prove that Omni Marine had any notice of this allegedly unsafe condition or that Omni Marine had an opportunity to correct it.  Capt. Vizier admits that no one ever complained about the valve being in the wrong place.[69]  Capt. Vizier admits the hose was never clogged before and the valve was never broken before.[70]

In *Tabor v. Gaubert Oil Co., Inc.,* 2008 WL 88667 (E.D. La. 1/7/2008) (Berrigan, J.), the plaintiff sought damages under the Jones Act as a result of injuries sustained when he fell into an open manhole in the galley of a vessel owned and operated by a third party. While recognizing that the Jones Act employer's duty to provide a safe place to work extends to third party vessels, the Court granted a motion for summary judgment filed by the Jones Act defendant.  The Court noted that the removal of the manhole cover was a "transitory dangerous condition" and the plaintiff could not show that an inspection of the area on an earlier date would have revealed the dangerous condition or the opportunity to correct.  According to the Court, "a Jones Act employer's duty to inspect for dangerous conditions does not include a duty to continuously inspect for such conditions."[71]

---

[69] Exhibit A – Deposition of Allen Vizier, p. 233 ln. 24- p.234 ln. 2.
[70] *Id.* p. 229 ln. 18-25.
[71] *Tabor*, 2008 WL at *2.

Similarly, in this case, the undisputed facts show that no one at Omni Marine was notified of a problem with the valve or hose in the engine room.[72] Capt. Vizier even testified that this specific problem had never happened before on the vessel.[73] Additionally, Mr. Waguespack testified that Capt. Vizier had no contact with anyone at Omni Marine, or Crescent Marine regarding a problem with the hose or valve in the engine room.[74]

The clogged hose or faulty valve to which Capt. Vizier was trying to gain access was not an "unsafe" or "dangerous" condition – in fact, Capt. Vizier had to go to quite extraordinary lengths (removing the bolted down stair case) to even get into a position to be able to lift the deck plate to get to the hose and valve.  However, even assuming for purposes of this Motion that this constituted an "unsafe" or "dangerous" condition, the clogged hose was a "transitory dangerous condition" as noted by the Court in *Tabor*, and it is beyond dispute that Omni Marine was not notified of any problem with the valve or hose and was not provided any opportunity to correct the alleged problem. Plaintiff's claims must therefore fail as a matter of law.

### 3. CAPT. VIZIER HAS NOT PRESENTED ANY EVIDENCE THAT OMNI MARINE BREACHED ITS DUTY TO PROVIDE A REASONABLY SAFE PLACE TO WORK.

The only unsafe condition on the vessel was the one created by Capt. Vizier when he unbolted the fixed staircase from the deck plate in the engine room and took it upon himself to attempt to lift a deck plate.

In his deposition, Capt. Vizier was asked how Omni Marine could have prevented his accident:

> Q.  Do you think there's anything that Crescent or Omni Marine could have done to prevent your accident?

---

[72] Exhibit A – Deposition of Allen Vizier, p. 227, lns. 11 – 14; p. 229, lns. 22 – 25; p. 233, lns. 3 – 7; Exhibit B – Deposition of Warren Waguespack, p. 111, lns. 12 – 22.
[73] Exhibit A – Deposition of Allen Vizier, p. 171, lns. 7 – 11.
[74] Exhibit B – Deposition of Warren Waguespack, p.111, lns. 12-22.

A.  Yes.

Q.  What is that?

A.  Had the valve in an accessible place, and that -- that the valve we had to use at least have something -- the opening that we can get to it, instead of having to reach your hand underneath there, and stuff, to open a valve or -- if something happens, you can't get to it.  You got to raise a plate up to get to it, if you think you got to fix it, or whatever.  Somebody should have came checked that fuel out.

Q.  All right.  Anything else?

A.  They should have had -- they should have had a valve on the fuel tank, like most boats got in --

THE COURT REPORTER:

Like most boats got what?

THE WITNESS:

Like most boats have a valve on the fuel tank, like most vessels have.

EXAMINATION BY MS. SEVIN:

Q.  O.K.  Anything else?

A.  No.  That's about it, I guess.[75]

Based on Capt. Vizier's own deposition testimony, he only complains about the location of the valve that he was trying to access – a location of which he was indisputably well aware having worked on the vessel since 2009.  He also admitted this problem had never occurred before, such that Omni even had notice that this was a potential problem on the vessel.[76]  Assuming for purposes of summary judgment that Mr. Vizier is correct, for purposes of negligence, this argument has two fatal flaws.  First, established above, the sole cause of the accident was Mr. Vizier's sole decision to handle the deck plate, and how he chose to handle the deck plate, just as Judge Fallon ruled in *Williams*.  Second, this

---

[75] Exhibit A – Deposition of Allen Vizier, p. 231, ln. 2 – p. 233, ln. 18.
[76] *Id.* at p. 171, lns. 7 – 11.

operation had never been performed before.  Mr. Vizier never contacted Omni before handling the deckplate.  Therefore, Omni did not have notice or the opportunity to correct the alleged unsafe condition.

## CONCLUSION

Any negligence contributing to Capt. Vizier's accident was on the part of Capt. Vizier himself.  Capt. Vizier was the captain of the vessel.  Capt. Vizier chose to handle a large, bolted-down deck plate.  He actually sent one of the deckhands to obtain a tool to assist with unbolting the deckplate, but failed to wait for the deckhand to return before starting to lift the plate. Capt. Vizier received training specifically instructing him to ask for help in lifting heavy loads.  As the captain, he had the ultimate authority to decide how to correct an issue such as a clogged valve or hose in the engine room and he chose the method and procedure the crew used to address the problem.

Capt. Vizier never contacted Omni before handling the deckplate.  Capt. Vizier even testified that no one on the vessel ever complained about the access to this valve before and that this specific problem had never happened on the vessel before. The undisputed facts show that no one at Omni Marine was notified of a problem with the valve or hose in the engine room.  Capt. Vizier cannot produce any evidence to show Omni Marine failed to provide him with a safe place to work, or that any alleged failure by Omni Marine was the cause of his accident.  Unfortunately, Capt. Vizier did not make a reasonable decision under the circumstances.  He cannot blame Omni for his error. Accordingly, Defendant, Omni Marine Transportation, Inc. moves for partial summary judgment, dismissing Capt. Vizier's claims of Jones Act negligence.

**DUNCAN & SEVIN, L.L.C.**

_____
**KELLEY A. SEVIN, T.A. (LA 25871)**
**JEFFREY J. SIEMANN (LA 34765)**
400 Poydras Street, Suite 1200
New Orleans, LA  70130
Telephone: (504) 524-5566
Facsimile: (504) 524-9003
E-Mail: ksevin@duncansevin.com
E-Mail: jsiemann@duncansevin.com
**Counsel for Defendant, Omni Marine Transportation, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record, this 10th day of March, 2015.

_____